**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Nicholas A. Dove,

      Plaintiff

v.

Silber, et al.,

      Defendants

Case No.: 2:25-cv-01011-JAD-EJY

**Order Screening
and Dismissing Complaint with Leave to
Amend by April 16, 2026**

[ECF No. 1-1]

Plaintiff Nicholas Dove brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth and Fourteenth Amendment rights were violated when High Desert State Prison (HDSP) staff housed him in administrative segregation (Ad Seg) due to his former gang affiliations and tried to house him in the Behavioral Management Unit (BMU) or Protective Custody (PC). Because Dove applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has not pled any colorable claim, so I give him until April 16, 2026, to file an amended complaint to attempt to replead his claims.

**Background**

**A.    Dove's factual allegations[2]**

Dove dropped out of a security threat group (STG) when he arrived at HDSP and tried the BMU program that caseworkers recommended. PC inmates in the BMU "who were in [illegible] with [Dove] on last bid sent a hit on [him] to the BMU program because they saw [him]." Dove isn't safe in PC or general population (GP) at HDSP or Ely State Prison because

---

[1] ECF No. 6.

[2] This is a summary of allegations and should not be taken as findings of fact.

of the hit.  So he's housed in Ad Seg at HDSP where he cannot work, program, or receive packages.  GP inmates have access to those privileges.

Since Dove got placed in Ad Seg, Lieutenant Barth and caseworkers Silber, Moore, and Amerker "lied" and "manipulated" him to go back to the BMU.  They've done so "on and off paper" and despite Dove's safety claims, which they have not investigated.  Dove told these defendants that he owed money to dropout gang members in PC and the BMU and that he was a dropout Sureños member and thus unable to house in GP.

These defendants charged Dove with disciplinary violations for refusing to move.  Barth "lied," telling Dove that he could be forced to move anywhere these defendants chose.  When asked about this, Silber said it was to be determined.  Moore won't respond to Dove's kites about his housing.  And Silber says that Dove's only options other than Ad Seg are the BMU or PC.

Per AR 509, these defendants could have transferred Dove to a different facility so he could work and program and thus earn credits against his sentence.  Ad Seg has caused Dove "mental health issues" and prevents him from getting drug-dependence counseling.

**B.    Dove's claims**

Based on these allegations, Dove sues Barth, Silber, Moore, and Amerker.  He brings two claims and seeks declaratory, injunctive, and monetary relief.  Dove articulates that he brings an Eighth Amendment safety-indifference claim and a Fourteenth Amendment due-process claim about his placement in Ad Seg.

**Discussion**

**A.    Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[3]  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[4]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[5]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[6]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[7]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[8] but a plaintiff must provide more

---

[3] *See* 28 U.S.C. § 1915A(a).

[4] *See* 28 U.S.C. § 1915A(b)(1)(2).

[5] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[6] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[7] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[8] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[9] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[10] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11]

**B.    Analysis of claims**

*1.    Dove fails to state a colorable safety-indifference claim.*

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.[12] To state a violation of this duty, the prisoner must plead facts showing that prison officials were deliberately indifferent to serious threats to the inmate's safety.[13] To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[14] Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[15]

---

[9] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[11] *Id.*

[12] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[13] *Id.* at 834.

[14] *Id.* at 837.

[15] *Id.* at 843.

Dove fails to state a colorable safety-indifference claim. He alleges that he's a former member of the Sureños gang. Upon entering HDSP's BMU, "PC inmates who were in GP with [Dove]" during his last prison term "sent a hit on [him] to the BMU program because they saw [him]." Dove told Barth, Silber, and Amerker that he owed money to dropout gang members in PC and the BMU and could not go to GP because he's a dropout Sureños member. Barth, Silber, Moore, and Amerker nonetheless tried to get Dove to move to the BMU or PC, causing him to be disciplined for refusing to move.

These allegations are too generalized and vague to plausibly state that any defendant knew of and disregarded an excessive risk to Dove's safety. For example, there are no factual allegations that any defendant knew who put a hit on Dove, approximately when that happened, and how Dove became aware of it. There are no factual allegations that any defendant knew who Dove owed money, facts about that debt, and facts tending to show that they pose a threat to his safety. Nor are there any factual allegations that any inmate in the BMU or PC threatened Dove's safety. So the Eighth Amendment safety-indifference claim is dismissed without prejudice and with leave to amend.

### 2.    Dove fails to state a colorable due-process claim.

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law."[16] However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."[17] "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the

---

[16] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[17] *Id.*

Constitution that are of general application."[18]  The Supreme Court has held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[19]  "[T]here 'is no single standard' for determining when circumstances are atypical and significant,"[20] but the Ninth Circuit has detailed three guiding considerations: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence."[21]

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner.[22]  After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement.[23]  An inmate has the right to notice and the right to be heard.[24]  The Ninth Circuit has held that if the prisoner alleges material differences between the conditions in general population and

---

[18] *Id.*

[19] *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[20] *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (quoting *Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022); and *Sandin*, 515 U.S. at 484)).

[21] *Id.* (citation modified) (quoting *Johnson*, 55 F.4th at 1195–96).

[22] *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. 472.

[23] *See Hewitt*, 459 U.S. at 477 n.9.

[24] *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).

administrative segregation, the prisoner's procedural due-process claim should not be dismissed on the pleadings.[25]

Dove fails to state a colorable due-process claim. He alleges that he might be indefinitely housed in HDSP's Ad Seg because he cannot be safely housed elsewhere in the prison due to his past gang affiliation. He has no access to employment or programming in Ad Seg, which means that he is not eligible to earn credits against his sentence for those activities. There are no factual allegations about the decision to initially place Dove in Ad Seg or any subsequent decisions to continue housing him there.

As for the first element of the analysis, these allegations do not give rise to an atypical and significant hardship compared to the ordinary incidents of prison life that is required to state a protected interest.[26] For instance, inmates lack a liberty interest in their prison placement except when transfer imposes atypical and significant hardships as stated in *Wilkinson v. Austin*, 545 U.S. 209 (2005).[27] Dove's alleged conditions in Ad Seg fall short of the conditions found to create a liberty interest in *Wilkinson*.[28] Inmates lack a property or liberty interest in prison

---

[25] *See Jackson v. Carey*, 353 F.3d 750, 755–57 (9th Cir. 2003).

[26] *See, e.g.*, *Hewitt*, 459 U.S. at 468 (holding that "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Johnson*, 55 F.4th at 1190 (explaining that protective custody in segregated housing "is not intended to be punishment for violation of prison rules or to protect others from the segregated inmate. It is for the protection of the former gang member and is the direct result of the inmate's own unfortunate past associational choices").

[27] *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. 472, ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State.") (collecting cases).

[28] *Wilkinson*, 545 U.S. at 214–15 (transfer to Ohio's supermax prison including prohibition of almost all human contact, indefinite duration, and disqualification from parole consideration).

employment and programming.[29]  And the Ninth Circuit has "stressed that restrictions constituting atypical and significant hardship should cause a material change in the underlying conditions of an inmate's confinement, with incidental, fleeting benefits such as a two-person recreation period, favorable job assignments, unrestrained meals, unrestrained walks and access to the showers and recreation areas, or access to a GED program failing to rise to that level."[30]

Dove also has not satisfied the second element of the due-process analysis because there are no factual allegations that he was denied any federally guaranteed procedures when he was placed or retained in Ad Seg.  Out of an abundance of caution, the Fourteenth Amendment due-process claim about segregation is dismissed without prejudice and with leave to amend.

**C.    Leave to amend**

It appears that Dove could cure the deficiencies of his Eighth Amendment safety-indifference and Fourteenth Amendment due-process claims, so I grant him leave to amend to attempt to replead these claims.  Dove does not have leave to add new claims.

If Dove chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[31]  This means that Dove's amended complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit.  Dove must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be titled "First Amended

---

[29] *See, e.g.*, *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (regarding prison employment) (collecting cases); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (recognizing no property interest in vocational programming "because there is no constitutional right to rehabilitation").

[30] *Ashker v. Newsom*, 81 F.4th 863, 889 (9th Cir. 2023) (citation modified) (quoting *Johnson*, 55 F.4th at 1196).

[31] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

Complaint." Dove must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **He must file the amended complaint by April 16, 2026.**

### Conclusion

IT IS THEREFORE ORDERED that a decision on the application to proceed *in forma pauperis* (ECF No. 6) is deferred.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to

- **FILE** the complaint (ECF No. 1-1).

- **SEND** plaintiff the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No.1-1).

- **UPDATE** defendant Silver to Silber on the docket and change this case's short title accordingly.

IT IS FURTHER ORDERED that all claims are DISMISSED without prejudice and with leave to amend.

If plaintiff chooses to file an amended complaint, he must use the approved form and he should write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If plaintiff does not file an amended complaint by April 16, 2026, this action will be subject to dismissal without prejudice.**

Dated: March 16, 2026

_____
U.S. District Judge

9