**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nicholas A. Dove,<br>Plaintiff<br>v.<br>Silber, et al.,<br>Defendants | Case No.: 2:25-cv-01011-JAD-EJY<br><br>**Order Screening Amended Complaint**<br><br>[ECF No. 11] |

Plaintiff Nicholas Dove brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth and Fourteenth Amendment rights were violated when he was housed in administrative segregation and his safety needs were ignored at High Desert State Prison (HDSP). Dove's original claims were deficiently pled, so I dismissed them with leave to amend.[1] Dove timely filed his first amended complaint (FAC).[2] Because Dove applies to proceed *in forma pauperis*,[3] I screen his FAC under 28 U.S.C. § 1915A. I find that Dove states colorable Eighth Amendment failure-to-protect and First Amendment retaliation claims, so those claims will proceed to mediation.

## Background

### A. Dove's factual allegations[4]

Dove was a general-population inmate in county jail but ran with a security-threat group, i.e., a gang, before being transferred to HDSP. Dove was placed in the B.M.U. program at

[1] ECF Nos. 7, 10.

[2] ECF No. 11.

[3] ECF No. 6.

[4] This is a summary of allegations and should not be taken as findings of fact.

HDSP but soon “ran into issues” with gang members. He provided “proof” and “several written threats from other inmates” to Lieutenant Barth in front of the caseworkers. Since doing so, Dove has been repeatedly “manipulated, threatened, and punished” by prison officials because his complaints have not been investigated and he has not been transferred to a safer facility.

Dove received a handwritten note with “explicit threats of death from known gang members within in the institution related to an alleged debt.” He provided that note to Barth, and it was reviewed by caseworkers Moore, Ameiker, and Silber. The threatening note was also provided to prison officials during a hearing about Dove’s classification and protective custody. Dove asked to be transferred to a different facility for his safety, but officials did not investigate his claims and refused to transfer him.

Officials have since repeatedly tried to return Dove “to units where threat exists and provide [him] disciplinary writeups for refusing” housing assignments. On April 21, 2026, Dove had a classification hearing. He was moved from unit 7A-30 to 7D-31 the week before. Officials said he was required to participate in a “50/50 program,” meaning “half [protective custody] [and] half [general population].” Dove told officials that he has “safety issues” with both populations. Dove was given a “major writeup” for refusing the program and was housed in a cell “full of feces and urine.” Dove wrote a kite before the writeup asking why officials were deliberately placing him in harm’s way. The response said the issue was discussed during the classification hearing.

**B. Dove’s claims**

Based on these allegations, Dove sues Moore, Ameiker, Silber, and Barth. He seeks monetary and injunctive relief. He states in the FAC that he brings claims under the Fifth, Fourteenth, and Eighth Amendments about “deliberate indifference.” But the allegations do not

raise claims under the Fifth or Fourteenth Amendments, so those claims are dismissed with prejudice. And I generously construe the FAC as bringing an Eighth Amendment claim about the failure to protect Dove against other inmates' violence and a First Amendment claim for retaliation.

## Discussion

### A. Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[5] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[6] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[7]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[8] In making this determination, the court takes all allegations of material fact as true and construes them in

[5] *See* 28 U.S.C. § 1915A(a).

[6] *See* 28 U.S.C. § 1915A(b)(1)(2).

[7] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[8] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

the light most favorable to the plaintiff.[9] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[10] but a plaintiff must provide more than mere labels and conclusions.[11] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[12] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]

**B. Analysis of claims**

***1. Dove states a colorable Eighth Amendment failure-to-protect claim.***

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners."[14] To state a claim for violation of this duty, the plaintiff must allege facts showing that two elements are met: (1) the risked faced by the inmate is, "objectively, sufficiently serious" and (2) prison officials act "with deliberate indifference to inmate health or safety, meaning that they have subjective knowledge that the inmate faces a substantial risk of serious harm."[15] "This second requirement can be established based on a

[9] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[10] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[13] *Id.*

[14] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[15] *Sheltra v. Christensen*, 124 F.4th 1195, 1200 (9th Cir. 2024) (citation modified) (quoting *Farmer*, 511 U.S. at 833–34 & 837).

known *threat* of harm."[16] The Ninth Circuit has "held that explicit threats made against a particular inmate that are reported to prison officials trigger a duty to protect."[17]

Dove states a colorable failure-to-protect claim. He alleges that he ran with a gang before he was transferred to HDSP. He had "issues" with former gang members immediately upon placement in HDSP's BMU. He received a written note containing death threats from known members of his former gang about an alleged debt he owed. He provided the note to Lieutenant Barth and caseworkers Ameiker, Moore, and Silber reviewed it. The note was also provided during Dove's classification and protective-custody proceedings. Dove requested a transfer to a different facility due to his safety concerns. He declined a program where he'd be around general-population and protective-custody inmates at HDSP because of his safety concerns. These facts satisfy the first element of the Eighth Amendment analysis to show that Dove faced a substantial risk of serious harm.

The allegations also satisfy the second element of the analysis. Dove contends that Barth, Ameiker, Moore, and Silber each saw the note that known members of his former gang sent threatening to kill him over a debt that they claimed he owed. The note was also provided to officials during a hearing about Dove's classification and custody status. The allegations permit the reasonable inference that Barth, Ameiker, Moore, and Silber are the "prison officials."

Officials did not investigate the gang's death threat. Because of the threat, Dove sought to be transferred to a different facility and refused to participate in a 50/50 program where he'd be around general-population and protective-custody inmates. But officials didn't transfer Dove to a different facility. Rather, they have repeatedly tried to get him to accept housing in units

---

[16] *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993); and *Farmer*, 511 U.S. at 834).

[17] *Id.* (collecting cases).

where the threat still exists. And they charged him with a "major" disciplinary violation and housed him in a very dirty cell[18] when he refused to participate in the 50/50 program. The Eighth Amendment failure-to-protect claim will therefore proceed against Barth, Ameiker, Moore, and Silber.

***2. Dove states a colorable First Amendment retaliation claim.***

Inmates have a First Amendment right to file grievances and to pursue civil rights litigation in the courts.[19] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[20] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[21] Total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[22]

---

[18] The allegations about the cell are too thin to state an Eighth Amendment claim about unconstitutional housing conditions.

[19] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[20] *Id.*

[21] *Id.* at 567–68.

[22] *Id.* at 568–69.

Dove states a colorable First Amendment retaliation claim. He alleges that he repeatedly reported his safety concerns about known members of his former gang threatening to kill him about a debt that they claimed he owed. He sought to be transferred to a different facility and refused to participate in a 50/50 program where he'd be around gang members. He sent a kite to prison officials asking why they continued placing him in harm's way. Barth, Ameiker, Moore, and Silber did not investigate the threat, tried to get Dove to accept housing where the threat still existed, and charged him with a "major" rule violation and housed him in an unsanitary cell when he refused the 50/50 program and complained about their housing decisions. The allegations permit the inference that disciplinary write ups and unsanitary housing conditions would deter a person of ordinary firmness from engaging in First Amendment activities. Dove's First Amendment retaliation claim will therefore proceed against Barth, Ameiker, Moore, and Silber.

**Conclusion**

IT IS THEREFORE ORDERED that **Dove's Eighth Amendment failure-to-protect and First Amendment retaliation claims MAY PROCEED**; any other claims are dismissed with prejudice as amendment would be futile.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **SEND** the plaintiff a copy of his first amended complaint (ECF No. 11).

Given the nature of the claims that I have permitted to proceed, IT IS FURTHER ORDERED that **this action is STAYED for 90 days** to allow the parties an opportunity to settle their dispute before the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the

parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. **I refer this case to the court's Inmate Early Mediation Program** and will enter a subsequent order about that matter. If the court has not entered an order setting an Inmate Early Mediation Conference within 90 days of this order, the Office of the Attorney General will file a notice informing the court that this case is awaiting a mediation date. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Once an answer is filed, the court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Dove's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If the case does not settle, then the court will decide whether to grant Dove's *in forma pauperis* application. Dove will be required to pay the full $350 statutory filing fee for a civil action regardless of whether the court grants his application. This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting the application. If Dove is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Dove is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

If any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days before the date

set for mediation. The responding party will then have 7 days to file a response. No reply may be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

If Dove needs an interpreter to participate in the mediation program, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

IT IS FURTHER ORDERED that **the Clerk of Court is further directed to ADD** the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the court within 21 days of this order whether it will enter a limited notice of appearance on behalf of Interested Party** for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: September 19, 2026

U.S. District Judge